1
2
3
4
5
6              **UNITED STATES DISTRICT COURT**
7                    **DISTRICT OF NEVADA**
8                            * * *

9    HANK ZABALA,                        Case No. 2:13-cv-00393-RFB-PAL
10              Plaintiff,                         **ORDER**
11         v.
12   SHERIFF MIKE HALEY; DEPUTY
     BALAAM; DEPUTY YOUNGBLOOD;
13   DEPUTY JENKINS; DEPUTY
     CHRISTENSEN,
14
              Defendants.
15

16   **I.    INTRODUCTION**
17        This case is before the Court on the following motions:
18        1.  Plaintiff's Motion for Leave to File an Amended Complaint. ECF No. 41
19        2.  Defendants' Motion to Strike re Response (ECF No. 34). ECF No. 35
20
          3.  Defendants' Motion to Strike re Response to Motion, Reply to Response to Motion,
21
              Response to Motion, Response to Motion by Defendants (ECF Nos. 36, 42, 38, 44).
22            ECF No. 45
23
          4.  Defendants' Motion for Summary Judgment. ECF No. 28
24
25
26        For the reasons stated below, the Court denies Plaintiff's Motion for Leave to File an
27   Amended Complaint, denies Defendants' Motions to Strike (ECF Nos. 35 and 45), and grants
28   Defendants' Motion for Summary Judgment.

## II.     BACKGROUND

The following facts are alleged in Plaintiff's Amended Complaint. ECF No. 5. Plaintiff Hank Zabala is incarcerated at High Desert State Prison. He alleges that he was placed in disciplinary segregation at the Washoe County Detention Facility from August 9, 2011 through July 2012 as an act of racial bias and discrimination because he is a Mexican American, and also in retaliation for his efforts to file grievances. He raises claims for:

1) violations under the First Amendment, for being placed in administrative segregation in retaliation against his filing grievances;

2) violations under the Equal Protection Clause of the Fourteenth Amendment for being placed in administrative segregation as an act of racial bias and discrimination because he is Mexican American; and

3) violations of procedural due process for being placed in administrative segregation as a pre-trial detainee.

Plaintiff seeks compensatory and punitive damages along with declaratory relief.

The only remaining claims are those against Defendants Sheriff Haley and Deputies Balaam and Jenkins, in their individual capacities.

## III.    PROCEDURAL HISTORY

Plaintiff Zabala filed a Motion for Leave to Proceed in forma pauperis on March 7, 2013. ECF No. 1. On November 12, 2013, the Court granted Plaintiff's Motion. ECF No. 2. Plaintiff filed his Complaint on November 12, 2013. ECF No. 4. Plaintiff filed his Amended Complaint with Jury Demand on November 21, 2013. ECF No. 5. The Court ordered on April 22, 2014 that all claims against all Defendants in their official capacity are dismissed without prejudice for failure to state a claim upon which relief may be granted, with Plaintiff's claims against the Defendants in their individual capacity remaining before the Court. ECF No. 6.

On December 29, 2014, Defendants filed a Motion for Summary Judgment. ECF No. 28. On February 5, 2015, Plaintiff filed an "Opposition." ECF No. 34. On February 10, 2015, Defendants filed a Motion to Strike [34] Response. ECF No. 35.

On March 16, 2015, Plaintiff filed a Motion for Leave to File an Amended Complaint re First Amended Complaint (ECF No. 5). ECF No. 41.

On March 18, 2014, Defendants filed a Motion to Strike Response to Motion (ECF No. 36), Reply to Response to Motion (ECF No. 42), Response to Motion (ECF No. 38), Response to Motion (ECF No. 44). ECF No. 45.

## IV.    MOTION TO AMEND (ECF No. 41 )

Plaintiff originally named Deputies Christensen and Youngblood in his Amended Complaint. ECF No. 5.

On April 22, 2014, the Court ordered that "[w]ithin twenty (20) days after receiving from the Marshal a copy of the USM-285 form showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying which Defendants were served and which were not served, if any. If Plaintiff wishes to have service again attempted on an unserved Defendant(s), then a motion must be filed with the Court identifying the unserved Defendant(s) and specifying a more detailed name and/or address for said Defendant(s), or whether some other manner of service should be attempted. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, Plaintiff must complete service within 120 days from entry of this order." ECF No. 6.

On May 28, 2014, Summons was returned unexecuted as to these two defendants. ECF No. 11. The reasons stated were that there were "multiple deputy Christensens" and that Deputy Youngblood was no longer employed by Washoe County Sheriff's Office. ECF No. 11.

On March 16, 2015, Plaintiff filed a motion to amend his Amended Complaint to change the name of Christensen and Youngblood to include their first initials and badge numbers. ECF No. 41. Defendants oppose Plaintiff's motion, arguing that Christensen and Youngblood are not defendants to this action because they were not served, and further, Plaintiff's motion is untimely.

Because Plaintiff never served Defendants Deputies Christensen and Youngblood, and because of the delay in the filing of the motion, the Court DENIES Plaintiff's motion to amend to include the two unserved defendants.

. . .

**V.      MOTIONS TO STRIKE. ECF (Nos. 35 and 45)**

On December 29, 2014, Defendants filed a Motion for Summary Judgment. ECF No. 28. On January 20, 2015, the Court granted Plaintiff's Motion to Extend Time and set the deadline for filing a Response to Summary Judgment to February 23, 2015. ECF No. 32. Plaintiff filed an unsigned "Opposition" (Plaintiff's First Response) on February 5, 2015. ECF No. 34. Defendants moved to strike the Opposition on February 10, 2015. ECF No. 35.

Plaintiff subsequently filed a Motion on February 19, 2015, which the Court construes as a request to amend his previous Response to comply with the Federal Rules, specifically with regards to FRCP 11. ECF No. 36.

On February 27, 2015, the Plaintiff filed another Response (Plaintiff's Second Response) to the Defendants' Motion for Summary Judgment. ECF No. 38. The Plaintiff then filed two additional Responses on March 16, 2015 (Plaintiff's Third and Fourth Responses). ECF Nos. 42 and 44.

Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented… The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." The Court has reviewed the Plaintiff's First Response (ECF No. 34) and finds that it was unsigned. The Court will not strike the unsigned paper, however, because Plaintiff's Motion on February 19, 2015 (ECF No. 36) seeks to address the omission once it was brought to his attention by Defendants (ECF No. 35). Therefore, the Court will consider the exhibits attached to Plaintiff's First Response in its decision on summary judgment, but will disregard the unsigned Response itself.

Because of the Court's desire to resolve Motions for Summary Judgment on the merits, the Court will consider Plaintiff's subsequent Responses (ECF Nos. 34, 36, 42, 44) and DENIES Defendants' Motions to strike (ECF Nos. 35 and 45). Taking into consideration the briefs and exhibits included in the aforementioned responses, the Court makes the following findings as regards summary judgment.

. . .

**VI.     MOTION FOR SUMMARY JUDGMENT. ECF No. 28**

    **A.  Undisputed Facts**

      The parties do not dispute the following factual allegations (See Am. Compl., ECF No. 5 and Mot. Summ. J., ECF No.  28):

      Mr. Zabala is currently a resident of the High Desert State Prison in Nevada. During the relevant time period from August 2011-July 2012, Mr. Zabala was housed at the Washoe County Regional Detention Facility ("the Facility").   Mr. Zabala is Mexican American.

      Prior to August 9, 2011, Plaintiff was placed in Administrative Segregation on several occasions while at the Facility. Classification reports submitted by both Plaintiff and Defendants indicate that Mr. Zabala was placed in Administrative Segregation either as a result of Plaintiff's behavior within the Facility, or upon Plaintiff's request to be placed or remain there. For example, on March 17, 2011, Plaintiff indicated that he wanted to remain in Administrative Segregation. Opp'n, ECF No. 34 at 40. On July 24, 2011, Plaintiff was placed in Administrative Segregation for failure to comply with instructions given during a shakedown. Id. at 31. On several occasions, Plaintiff's request to be moved to General Population was approved by prison officials. See Id. at 34. On one occasion, this request was denied due to room restrictions. Id. at 38.

      At some time prior to August 9, 2011, Mr. Zabala filed a grievance alleging the use of excessive force by a Washoe County Sheriff's Deputy. At some time prior to August 9, 2011, Mr. Zabala filed grievances about his treatment as an inmate at the Washoe County Regional Detention Facility.

      On or about August 9, 2011, Mr. Zabala was placed into Administrative Segregation. In the summer of 2011, tensions in Housing Unit 8, where Mr. Zabala was housed, resulted in a fight between various inmates housed in that portion of the Facility on July 31, 2011. As a result of this altercation, an investigation was conducted by prison staff to determine the underlying facts which caused the fight. The investigation concluded that Mr. Zabala was the "shot caller" for the Surenos gang members in the housing unit. The investigation indicated that Plaintiff's affiliation with the Surenos gang was corroborated by the tattoo art on his body known to represent such association. Consequently, Plaintiff was one among several inmates sent to Administrative Segregation for the

safety and security of the facility due to his involvement in gang politics within the Facility. See Opp'n, ECF No. 34 at 16-24; Mot. Summ. J., Ex. A, ECF No. 28 at 30.

Between August 9, 2011 and July 2012, Plaintiff's classification in Administrative Segregation was reviewed on a monthly basis. This review included interviews with Mr. Zabala. See Opp'n, ECF No. 34 at 87-95; Mot. Summ. J., Ex. G, ECF No. 28. at 244-45. Classification Case Memoranda state that Plaintiff was not eligible to move to General Population due to safety and security concerns as a result of continued gang affiliation and his history and pattern of behavior within the facility. Id. On one occasion, on March 29, 2012, Deputy Youngblood, tasked to interview Zabala, reported that Plaintiff "stated he did not need a review." Mot. Summ. J., Ex. G, ECF No. 28. at 252; Opp'n, ECF No. 34 at 93.

On December 5, 2011, a search of Mr. Zabala's cell disclosed handmade weapons, specifically, two pencils that had been altered to expose elongated lead at the ends, and a "billy club" made out of a rolled up magazine and packing tape. Mot. Summ. J., Ex. C., ECF No. 28 at 220-21. Plaintiff was convicted of Possession or Control of a Dangerous Weapon or Facsimile thereof by an Incarcerated Person. Id., Ex. D. at 226-27.

### B.  Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

. . .

### C.  Claims Against Sheriff Haley

Liability under Section 1983 arises only upon a showing of personal participation by the defendant. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983. Id.

Plaintiff does not allege that Sheriff Haley personally participated in any of the particular causes of action he raises. Further, Plaintiff has not provided evidence to support the allegation that Sheriff Haley personally participated in any of the constitutional violations Plaintiff alleges. Specifically, Plaintiff has not demonstrated that Sheriff Haley is a part of the classification process. See Mot. Summ. J., Ex. A, ECF No. 28 at 37. A review of the classification case memoranda reveals that Deputies, rather than the Sheriff, determine inmate classification. These memoranda appear to be signed, at times, by a Sergeant. The memoranda do not appear to be signed and approved by Sheriff Haley.

The only allegations Plaintiff makes in his Opposition to the summary judgment motion regarding Sheriff Haley's participation were that Haley was the Sheriff in charge of the Facility in which Plaintiff was housed and should have prevented deputies from violating Mr. Zabala's constitutional rights. Opp'n, ECF No. 34 at 3. However, there is no allegation that Sheriff Haley actually knew of any of the alleged actions, nor has Plaintiff provided evidence showing that Sheriff Haley knew of unconstitutional actions by deputies under his control and failed to prevent them.  Indeed, Plaintiff admitted at the hearing that he had no evidence that Haley specifically participated in any decision or approval of a decision related to his classification or placement. Therefore, the Court GRANTS Defendants' motion for summary judgment regarding claims against Sheriff Haley.

. . .

. . .

. . .

. . .

## D.  First Amendment Retaliation Claim

Mr. Zabala alleges in his Amended Complaint that he was placed in Administrative Segregation from August 2011 until July 2012 as a retaliatory measure against his filing grievances against the deputies at Washoe County in violation of his constitutional right to free speech under the First Amendment. Am. Compl. at 6.

The Ninth Circuit has held that prisoners have a right under the First Amendment to file grievances against prison officials and to be free from retaliation for doing so. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.2009).

To establish a First Amendment retaliation claim within the prison context, a plaintiff must establish five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004).

Defendants concede that Plaintiff's allegation that he was placed in Administrative Segregation because he asserted an excessive force claim against Deputy Evans satisfies the requirement that adverse action was taken against Plaintiff. Mot. Summ. J., ECF No. 28 at 14. Plaintiff has also demonstrated that Deputy Balaam was involved in the process of initially classifying Plaintiff in August 2011. Opp'n, ECF No. 34 at 16-24. Specifically, it appears that Deputy Balaam was involved in interviewing various inmates in order to investigate the July 31, 2011 fight that led to Zabala's classification into Administrative Segregation. Id. Plaintiff has not demonstrated involvement on the part of Deputy Jenkins. Moreover, the evidence does not suggest that Deputy Balaam was responsible for classifying Plaintiff into Administrative Segregation. Rather, the record indicates that Deputy Leonard was responsible for the initial placement in August 2011. From that initial placement until July 2012, there is no evidence before the Court to indicate that either Deputies Balaam or Jenkins were involved in the classification process after the initial classification.

. . .

. . .

1    Further, this Court considers the relevant time period for Plaintiff's claims to be August

2    2011 to December 2011, given that Mr. Zabala was convicted for possession of a dangerous

3    weapon in December 2011 and reclassified as being in Disciplinary rather than Administrative

4    Segregation.

5    The Plaintiff cannot demonstrate that Deputy Balaam, even with his involvement in the

6    interview process that placed Plaintiff in Administrative Segregation initially, took such adverse

7    action because of the grievance Plaintiff filed against the Deputy Evans for excessive use of force.

8    There is no indication that Balaam knew of the filing of the grievance or would have some reason

9    to retaliate for a grievance filed against Evans and not Balaam.

10    Additionally, the Court notes that neither party has produced a copy of the grievance

11    regarding the incident in question, nor has the Plaintiff indicated when he submitted this grievance.

12    However, the Court has reviewed the reports filed by Deputies Evans, Cheung, and Sarratea, and

13    notes the time lapse, approximately four months, between the excessive force incident on March

14    6, 2011, and Plaintiff's contested placement in Administrative Segregation from August 2011 until

15    July 2012. Opp'n, ECF No. 34 at 76-84. Even assuming that Plaintiff did not file his grievance

16    until a later time closer to his yearlong assignment to Administrative Segregation, in the time

17    between March 6, 2011 and August 2011, it appears that Plaintiff was placed in Administrative

18    Segregation on several occasions, including on July 22, 2011 when Mr. Zabala failed to follow

19    certain instructions during shakedown. Id. at 31. Therefore, Plaintiff cannot demonstrate that the

20    filing of specific grievance regarding excessive use of force was the cause of his eventual

21    placement in Administrative Segregation from August until December 2011.

22    The Plaintiff's retaliation claim does demonstrate that such action may have chilled his

23    exercise of his First Amendment rights. The Defendants concede that "[b]etween August 9, 2011

24    and July 2012, Mr. Zabala asked for grievance forms, and was discouraged from filing grievances

25    by unidentified deputies that grievances 'are for snitches and are red flags for cell searches.'" Mot.

26    Summ. J., ECF No. 28 at 3. Therefore, a material issue of fact exists as to the fourth element of

27    Plaintiff's First Amendment retaliation claim.

28    . . .

- 9 -

Nonetheless, the Court finds that placing Plaintiff Zabala in Administrative Segregation in August 2011 did reasonably advance a legitimate penological goal: the safety and security of the facility. The Court finds that the events leading up to Plaintiff's initial classification in August 2011 regarding his affiliation with the Surenos gang justifies placement in Administrative Segregation. Specifically, as a result of an altercation that took place on July 31, 2011, the following Classification case memorandum was written. "As regards Plaintiff, Washoe County Sheriff's Office found the following:  Inmate Zabala who acted as the 'Shot Caller' in [Unit] Eight [] ordered L. Sanchez and Padilla to leave the unit … Zabala told Inmate J. Devencenzi to force Inmate L. Sanchez out." Opp'n, ECF No. 34 at 22-23. This led to a fight between Devencenzi and Sanchez. As a result, "Zabala was sent to Housing Unit Four for the safety and security of the facility. This is due to his involvement in gang politics within the facility. His tentative review date is 8/31/11." Id. at 23. The memorandum indicates that Zabala was placed into Housing Unit Four on August 2, 2011. Id. at 16.

In conclusion, the Court finds that Plaintiff has failed to sufficiently demonstrate for this motion for summary judgment that a.) he was placed in Administrative segregation because of the filing of a grievance, b.) Deputies Jenkins and Balaam contributed intentionally in his placement in Administrative Segregation for an improper motive, or c.) the facility lacked a penological basis for placing him in Administrative Segregation.

### E.  Equal Protection Claim

The Ninth Circuit has held that "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). In order "[t]o avoid summary judgment, [Zabala] must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence" that the actions taken were racially motivated. Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).

Plaintiff has not alleged any evidence to suggest that his placement or treatment in Administrative Segregation was a result of racially motivated bias. While the parties do not dispute

that Plaintiff is Mexican American, Zabala has not provided evidence to the Court showing that his placement in Administrative Segregation was in any way related to his race. Rather, Plaintiff was placed in Administrative Segregation as a result of an investigation identifying him as the "Shot Caller" of the Surenos gang.  There are no outstanding issues of material fact regarding this claim. The Court therefore grants Defendants' Motion for Summary Judgment as to Plaintiff's First Equal Protection claims.

### F.  Due Process Claim

The Court construes Plaintiff's due process claim to relate to: 1) his initial classification in August 2011; and 2) his continued or recurring classification from August 2011 through July 2012, which the Court has narrowed to the period of August to December 2011 due to Plaintiff's conviction in December for possession of a weapon.

### 1. Initial Classification.

Plaintiff alleges that his due process rights were violated by his initial classification into Administrative Segregation in August 2011. Am. Compl., ECF No. 5 at 3. Specifically, he alleges that he was denied a fair hearing when placed into Administrative Segregation. Plaintiff alleges that he was denied an opportunity to defend himself against allegations that he was a "shot caller" for the Surenos gang after being placed in Administrative Segregation. Opp'n at 10.

Applying the Matthews v. Eldridge test for procedural due process to the prison context, the Supreme Court has held that when a person is placed into administrative segregation, the prison is obligated to engage in an informal, nonadversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation. Hewitt v. Helms, 459 U.S. 460, 472 (1983) (emphasis added). In defining the contours of the statement the respondent wished to submit, the Court stated that "[o]rdinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied." Id. at 476.

Defendants contend that Plaintiff was initially placed into Administrative Segregation as a result of a fight that erupted on July 31, 2011, leading to an investigation that identified Zabala as the "shot caller" for the Surenos gang. Mot. Summary Judgment at 9-11; See Opp'n at 16. It would appear that Zabala was then placed into Housing Unit 4, Administrative Segregation, on August 2, 2011. Id. at 16.

The first review of Zabala's classification following his placement on August 2, 2011 occurred 30 days later on September 2, 2011. Mot. Summ. J. at 244. During this review, conducted by Deputy Christensen, Zabala was told that he was not eligible to move to General Population due to his gang activity in Housing Units 8 and 15. Zabala argued that this decision is based on hearsay and is unfounded. He further asked Deputy Christensen to review video footage of his actions to corroborate his account that he was not involved in the fight on July 31, 2011 – specifically that he did not tell the other inmates to leave. Deputy Christensen informed the Plaintiff that this information was brought to his attention by various inmates. "Based on the totality of Zabala's behavior, [Deputy Christensen found that] [Mr. Zabala] is not eligible to move to General Population at this time" and consequently, Mr. Zabala would "remain in Housing Unit 4 as Administrative Segregation for facility safety and security purposes." Id.

The Court therefore finds that the September 2, 2011 classification process provided Zabala with a timely, informal, nonadversary review of the information supporting his administrative confinement, including allowing Zabala to make oral statements in his defense. The Court also finds that none of the Defendants (Haley, Balaam or Jenkins) appears to have been involved in this classification process. The Court finds that Zabala was not denied due process as to his initial classification in August 2011.

### 2. Recurring Classification.

Even after a prisoner has been placed in administrative segregation, however, prison officials must periodically review the initial placement. In Helms, the Court notes that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." Hewitt, 459 U.S. at 477 n.9. The Court goes on to explain that "[t]his review will not necessarily

require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner—which will have been ascertained when determining to confine the inmate to administrative segregation—and on the officials' general knowledge of prison conditions and tensions." Id.

A review of the evidence before the Court reveals that Plaintiff was afforded a classification review approximately every 30 days from August 2011 to December 2011. In these reviews, it was explained to Zabala that as a result of his pattern of behavior, gang affiliation, and a separate infraction in which Zabala was found to have a concealed weapon in his cell, he would remain in Administrative Segregation. Mot. Summ. J. at 245-54. The Court further notes that none of the defendants (Haley, Balaam or Jenkins) appears to have been involved in the classification process from August 2011 to December 2011.

The Court therefore finds that during the period in question, Plaintiff was afforded monthly review of his placement in Administrative Segregation and does not find a procedural due process violation as to his recurring classification.  The Court also notes that none of the Defendants participated in the reclassification process.

The Court grants the Defendants' Motion for Summary Judgment as to Plaintiff's due process claims.

### G.  Qualified Immunity

Because the Court grants Defendants' Motions for Summary Judgment and do not find that the officers' conduct violated the First Amendment or Fourteenth Amendment, the Court not need discuss whether Defendants Haley, Balaam, or Jenkins are entitled to qualified immunity.

. . .

. . .

. . .

. . .

. . .

. . .

**VII.    CONCLUSION**

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 41) is DENIED. **IT IS FURTHER ORDERED** that Defendants' Motions to Strike (ECF Nos. 35 and 45) are DENIED. **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 28) is GRANTED.

DATED this 30th day of September, 2015.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**